UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVEN D. TAYLOR,

        Plaintiff,

v.                                 Case No. 1:11-cv-46
                                 Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/


## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Disability Insurance Benefits (DIB).

Plaintiff was born on February 6, 1969 (AR 142).[1]  Plaintiff alleged a disability onset date of September 2, 2004 (AR 142).  Plaintiff completed the 12th grade (AR 152), and he has previous employment as a concrete pourer (AR 148).  Plaintiff identified his disabling conditions as manic depressive disorder and knee problems (AR 147).  Plaintiff also stated that his medications make it hard for him to work (AR 147).  The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 3, 2009 (AR 14-24).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has engaged in substantial gainful activity in multiple months since the alleged onset date

of September 2, 2004, but that he has not engaged in substantial gainful activity for the entire period

(AR 16).  The ALJ stated:

> The claimant worked after the alleged disability onset date.  He earned
> $3,000.00 in 2005 and $23,625 in 2006 from Tradesmen International.  A statement
> from that company indicates that the claimant worked there from December 16, 2005,
> through May 12, 2006 (Ex. 4D, 7D).  He worked for Arrow Trucking from April 22,
> 2008, through October 1, 2008, and earned more than $1,000 per month from May
> through September 2008 (Ex. 5D, 6D). These work activities constituted substantial
> gainful activity.  However, during other periods after the alleged onset date, no
> earnings are reported.  Therefore, the sequential analysis will continue.

(AR 16).  The ALJ explained plaintiff's other substantial gainful activity as follows: plaintiff last

worked as a truck driver from May to September 2008, but quit because he did not like the work;

plaintiff previously had his own business as a concrete pourer until 2004, but the business failed

because he could not properly manage the money; plaintiff also worked for his uncle's business in

New Orleans as an electrician laborer in 2006 (AR 19).  Based on plaintiff's work record, the ALJ

found that he met the insured status requirements under the Act through September 30, 2010 (AR

16).

Second, the ALJ found that plaintiff had the following severe impairments: bipolar

disorder; and torn meniscus in the right knee, status post arthroscopic surgery in June 2007 (AR 16).

 At the third step, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404,

Subpt. P, App. 1 (AR 11).  In this regard, the ALJ reviewed Listing 1.02 (major dysfunction of a

joint) and Listing 12.04 (affective disorders) (AR 17).  The ALJ decided at the fourth step that

plaintiff had:

> the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except he is limited to occupations that don't require climbing and

4

require no more than occasional balancing, stooping, kneeling, crouching and crawling, and he is further limited to simple, repetitive tasks.

(AR 18). The ALJ also found that plaintiff could not perform any of his past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 23-24). Specifically, plaintiff could perform 31,600 jobs in the regional economy such as janitorial work (5,300 jobs), assembler (21,000 jobs), and inspector (5,400 jobs) (AR 23-24). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 2, 2004 through the date of the decision (September 3, 2009) (AR 24).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

**A.** **"Whether the Commissioner erred as a matter of law in failing to apply the 'treating physician rule' and by neglecting to contact Mr. Taylor's treating physician when an ambiguity existed as to the physician's medical opinion and in applying improper weight to the opinion.**

Plaintiff contends that the ALJ failed to contact his treating psychiatrist, Curt Cunningham, D.O., regarding an unsigned and undated "Mental residual functional capacity [RFC] assessment." At the administrative hearing held on March 24, 2009, the ALJ posed a question to the vocational expert (VE) regarding the limitations as set forth in two mental RFC forms, Exhibits 15F (AR 359-61) and 16F (AR 372-91). The ALJ referred to these as "two undated, unsigned forms," but then noted that one form appeared to be from "Ms. Johnson" and the other form appeared to be from "Dr. Cunningham" (AR 50). The ALJ further stated that the forms were "both identical, neither of which are signed or dated" (AR 50). It appears that the ALJ mis-spoke with

respect to these exhibits. Exhibit 15F is a mental RFC assessment signed by Gail Johnson, L.M.S.W., and dated March 10, 2009 (AR 40, 358-61). Exhibit 16F does not include a mental RFC assessment, but rather consists of "Outpatient hospital records surgery reports, MRI, X-ray results, progress notes, operative report, dated 03/27/2007 to 12/02/2008, from Spectrum Health Orthpaedics and Sports Medicine" (AR 372-91). As defendant points out, the ALJ was apparently referring to the unsigned RFC assessments at Exhibits 12F (AR 313-15) and 13F (AR 334-37). *See* Defendant's Brief at n. 5.

This unsigned mental RFC assessment[2] (Exhibit 13F) found that plaintiff was markedly limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticisms from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to be aware of normal hazards and take appropriate precautions; and, the ability to set realistic goals or make plans independently of others (AR 334-35).

The ALJ summarized the findings in this mental RFC assessment in a hypothetical question posed to the VE:

_____

[2] Plaintiff suggests this document comes from Dr. Cunningham's office, but there is nothing to indicate he personally filled it out or indeed ever saw it.

6

>       In any case, it indicates the individual would be markedly limited in the
> ability to remember detailed instructions, to carry out instructions, to maintain
> attention, to work with others, to complete a normal workweek, to interact with the
> public, to accept instructions or criticism, to get along with coworkers.  If you were
> markedly limited in all those areas suggesting your inability to do so would there be
> any jobs such an individual could perform that exists in significant numbers?

(AR 50).  The VE responded "[n]o," indicating that these limitations were work preclusive (AR 50).

After this colloquy, the ALJ stated that "[i]f there's nothing further, I'll close the hearing" (AR 50).

Plaintiff's counsel did not object to the closing of evidence or ask the ALJ to hold the record open

to submit a mental RFC assessment signed by Dr. Cunningham.  There is no evidence that plaintiff

or his counsel submitted a signed mental RFC assessment from Dr. Cunningham between the date

of the hearing (March 24, 2009) and the issuance of the ALJ's decision denying benefits (September

3, 2009).

>       In his decision, the ALJ gave no weight to the unsigned mental RFC assessment:

>       The medical opinion attributed to the claimant's psychiatrist cannot be given any
> weight because it was not signed or dated, and there is no evidence to prove that the
> form was completed by Dr. Cunningham.  In addition, his progress notes are almost
> completely bereft of any description of symptoms which could support extreme
> limitations.

(AR 21).    The record reflects that plaintiff submitted additional medical records to the Appeals

Council for review in a letter dated January 7, 2010 (AR 392-411).  These additional medical

records did not include a signed mental RFC assessment from Dr. Cunningham.

>       Plaintiff contends that the ALJ erred by rejecting the unsigned mental RFC

assessment and that the ALJ had a duty to recontact Dr. Cunningham to obtain a signed copy of the

assessment.  Plaintiff's Brief at pp. 6-7.  Plaintiff relies on 20 C.F.R. § 404.1512(e) ("Evidence")

which provides as follows:

7

(e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R.  § 404.1512(e).

Contrary to plaintiff's contention, the ALJ was not required to secure a new, signed mental RFC assessment from Dr. Cunningham.  First, plaintiff has the burden of proof to demonstrate the existence and severity of limitations caused by his impairments and that he is precluded from performing his past relevant work.  *Jones*, 336 F.3d at 474.  This burden would include providing the ALJ with a signed report from Dr. Cunningham.  Plaintiff failed to meet this burden when he submitted an unsigned copy of the report.  Although counsel was aware of this error at the time of the administrative hearing, and the ALJ's decision was not entered until several months after the hearing, counsel took no steps to remedy the error and submit a signed report to the ALJ. Because plaintiff was represented by counsel, this is not a case where the ALJ had a heightened duty

8

to develop a record for a claimant. *See Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir. 2003) (ALJ does not have a "special, heightened duty to develop the record" when the claimant is represented by counsel).

Second, § 404.1512(e) does not require the ALJ to recontact a physician in this case. Under § 404.1512(e) and Social Security Ruling (SSR) 96-5p,[3] two conditions must be met to trigger the duty to recontact a physician: "the evidence does not support a treating source's opinion . . . *and* the adjudicator cannot ascertain the basis of the opinion from the record." *Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 272-73 (6th Cir. 2010) (emphasis in original). Plaintiff contends that the lack of a signature as a clerical error which falls within the purview of § 404.1512(e)(i.e., "it is clear that the ambiguity is the mere fact that Dr. Cunningham forgot to sign and date the RFC assessment"). Plaintiff's Brief at p. 7. The court disagrees. Plaintiff has presented no evidence that Dr. Cunningham created or agreed with the report, or that he forgot to sign and date it. As such, the unsigned report was not "a treating source's opinion" for purposes of recontacting a physician under § 404.1512(e). *See Ferguson*, 628 F.3d at 272-73. Accordingly, this claim of error is denied.

> **B.**    **"Whether the Commissioner erred as a matter of law by improperly assessing lay testimony supported by evidence of record and whether the Commissioner erred as a matter of law in assessing the opinions of 'other' medical source opinions."**
>
> **1.**    **Ms. Johnson's opinions**

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

Plaintiff contends that the ALJ failed to properly consider the opinions of his therapist, Ms. Johnson.  Plaintiff points to two "work preclusive" mental RFC assessments prepared in 2007 (AR 313-16) and on January 7, 2010 (AR 393-95).  The assessment purportedly prepared in 2007 (Exhibit 12F) is unsigned and undated (AR 313-16).   The assessment prepared on January 7, 2010 is not relevant to these proceedings.  The ALJ never viewed this latter mental RFC assessment, which was dated four months after the ALJ's adverse decision (AR 393-95).[4]

The ALJ did consider Ms. Johnson's opinions set forth in the March 10, 2009 mental RFC assessment (Exhibit 15F), which Ms. Johnson did sign and in which she stated that plaintiff had marked limitations in the following categories: relating to co-workers; dealing with the public; behaving in an emotionally stable manner; and interacting with supervisors; deal with work stresses; maintaining attention/concentration; and, the ability to understand, remember and carry out complex job instructions (AR 358-61).   Ms. Johnson also found that plaintiff had marked limitations in maintaining concentration, persistence and pace, as well as having "four or more" episodes of decompensation each of extended duration (AR 360).

The ALJ evaluated Ms. Johnson's March 10, 2009 opinions as follows:

In determining the mental portion of the claimant's residual functional capacity, the undersigned gives great weight to the State agency opinion that the claimant retains the ability to understand, carry out and remember simple instructions, and make simple, work-related judgments and decisions, despite his moderate concentration limitations.  Thus, a limitation to simple, repetitive tasks is appropriate.  There is no credible evidence that the claimant cannot retain sufficient attention and concentration to perform such tasks for two hours at a time as required for competitive employment.   This finding is consistent with the claimant's

---

[4] When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Plaintiff's counsel has not requested a sentence-six remand for review of the post-hearing mental RFC assessment.

demonstrated ability to perform work activities during the period after the alleged
onset date.

The opinions from his therapist are not given significant weight because they
are not supported by treatment notes that give any indication of symptoms that would
justify such extreme limitations. Ms. Johnson acknowledged in her notes that the
claimant did not show significant signs of anxiety or depression when first seen in
January 2004. She later stated that his symptoms gradually got worse, but she
nevertheless asserted in her medical statement that he was markedly limited
beginning in January 2004. The record shows, however, that the claimant was able
to perform work activities after that date.

(AR 21).

The regulations require plaintiff to present evidence from acceptable medical

sources, such as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-

language pathologists to establish whether he has a medically determinable impairment. *See* 20

C.F.R. § 404.1513(a)(1) -(5). As a therapist, Ms. Johnson's opinions are not those of an acceptable

medical source under 20 C.F.R. § 404.1513. While her opinion can be considered as evidence from

an "other" medical source, it is not entitled the weight given to the opinions of doctors. *See* 20

C.F.R. § 404.1513(d)(1) (evidence from "other" non-medical sources includes information from

nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists);

*Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable

medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20

C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th

Cir. 2001) (physical therapist's report not afforded significant weight because the therapist is not

recognized as an acceptable medical source). Nevertheless, the SSA recognizes that opinions from

other medical sources "are important and should be evaluated on key issues such as impairment

11

severity and functional effects, along with other relevant evidence in the file."  SSR 06-03p (Aug. 9, 2006).

The ALJ recognized the significance of Ms. Johnson's opinions as set forth in the March 10, 2009 mental RFC assessment, evaluated her opinions set forth in the assessment, and found that the record did not support the extreme limitations in the assessment.  However, the ALJ ultimately decided to give great weight to the opinion of an acceptable medical source, state agency psychologist Matthew Rushlau, Ed. D. (AR 21).  After reviewing plaintiff's medical records, Dr. Rushlau concluded that although plaintiff was moderately limited with regard to maintaining concentration, plaintiff

> has not experienced substantial loss with regards to his ability to understand, carry out, and remember simple instructions; make simple work-related judgments and decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting.

(AR 268-85).  An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file.  *See* 20 C.F.R. § 404.1527(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation").  While plaintiff disagrees with the ALJ's review of Ms. Johnson's opinion, the ALJ did not commit an error by discounting her opinion.

### 2.    Mrs. Taylor's lay testimony

Plaintiff contends that the ALJ committed legal error by rejecting his wife's lay testimony.  Mrs. Taylor testimony at issue appears in the form of a third party function report (Exhibit 3E), in which she expressed her opinion that plaintiff could not work:

> [Plaintiff] filing for SSD was something I encouraged but he was reluctant to do.  I live with this man and his [sic] manic depressive.  I know the difference of when he's working and when he's not.  When he is not working he can control his

12

disease more than it controlls [sic] him.  The stress of going to work and all the aspects that go along with it are too much for him.  When he doesn't have the added stress he can maintain much better.  He still has his ups and downs but they are not as dramatic and don't last as long.  He needs to not have to work.

Thank you.

(AR 162).

The ALJ addressed Mrs. Taylor's comments as follows:

The claimant's wife also opined that the stress of going to work is too much for him, and he can maintain his mental health better when he doesn't have the added stress (Ex. 3E).  This opinion is given little weight because the claimant's wife is not a mental health specialist, and the claimant has, in fact, been able to engage in substantial gainful activity for significant periods since the alleged onset date.

(AR 22).

The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work.  20 C.F.R. § 404.1513(d).  These "other" sources include non-medical sources such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy.  20 C.F.R. § 404.1513(d)(4). Here, the ALJ rejected that portion of Mrs. Taylor's remarks that plaintiff's mental condition (manic depression) is so severe that "[h]e needs to not have to work" (AR 162).  The court does not doubt the sincerity of Mrs. Taylor's comments.  But the court cannot disagree with the ALJ that Mrs. Taylor's statements cross the line from a spousal observation to a medical diagnosis and ultimate conclusion that the claimant's manic depression is work preclusive.  The determination of disability is the prerogative of the Commissioner.  *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). In this regard, the ALJ is not bound by even a physician's conclusion that a claimant is unable to work.  *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will

13

determine that you are disabled' ).   With respect to Mrs. Taylor's other testimony, there is no requirement that the ALJ's decision address every piece of evidence.  *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record).  Accordingly, the ALJ did not commit legal error in rejecting Mrs. Taylor's statement that his manic depression was work preclusive.

> **C.    "Whether the Commissioner erred as a matter of law in postulating the RFC limited to 'simple, repetitive tasks' and in his hypothetical questions in determining RFC."[5]**

> **1.    The RFC determination**

Plaintiff contends that the ALJ's RFC determination was in error because the ALJ did not address "each function on a function-by-function basis" as required by SSR 96-8p.  Plaintiff's Brief at p. 14.  In addition, plaintiff states that the ALJ's RFC determination was erroneous by limiting plaintiff to the performance of "simple, repetitive tasks" because such a determination "does not constitute a sufficiently specific description pursuant to the regulations and controlling case law."  Plaintiff's Brief at p. 14.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 404.1545.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see*

---

[5] The court notes that plaintiff's counsel's brief omitted page 13 and included two copies of page 14.

*Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

"The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p ("Exertional and Nonexertional Functions). Each exertional function (sitting, standing, walking, lifting, carrying, pushing and pulling) must be addressed separately. *See* SSR 96-8p ("Exertional capacity"). Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength such as: postural (e.g., stooping and climbing); manipulative (e.g., reaching and handling); visual; communicative (hearing and speaking); mental (e.g., understanding and remembering instructions and responding appropriately to supervision); and the ability to tolerate environmental factors (e.g., tolerance of temperature extremes). *Id.* ("Nonexertional capacity").

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado* by reviewing plaintiff's medical history and functional limitations with respect to his physical and mental impairments (AR 16-24). The ALJ addressed in detail the medical records and opinion evidence regarding the effect of plaintiff's bipolar disorder and knee injury on his ability to perform his past work and other work (AR 16-24). The ALJ did this while discussing whether plaintiff's impairments met the criteria of Listings 1.02 and 12.04 (AR

15

16-18); while discussing plaintiff's activities of daily living (AR 16-19); while discussing plaintiff's mental health history and interaction with Ms. Johnson, Dr. Cunningham, and the consultative examination by Kenneth Vander Woude, Ph.D. (AR 19-22); and while discussing the extent of plaintiff's knee injury (AR 22-23).  While plaintiff disagrees with ALJ's evaluation and RFC determination, the ALJ's process in determining plaintiff's RFC was not in error.

## 2. The ALJ's hypothetical question[6]

At step five of the sequential evaluation, the ALJ found that plaintiff could perform substantial gainful activity, consisting of approximately 31,600 jobs in the regional economy (AR 23-24).  An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs.  *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations.  *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.  However, a hypothetical question need only include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human*

---

[6] In his reply brief, plaintiff states that defendant's brief did not address "the specific issue raised in Plaintiff's initial brief that the ALJ erred in posing deficient hypothetical questions," and that "[b]y neglecting to address this issue, Defendant concedes that the hypothetical questions are deficient, thereby resulting in an RFC not based upon substantial evidence."  Plaintiff's Reply Brief at p. 5.  Defendant's brief addressed plaintiff's claims regarding the defective RFC (which formed the basis for the hypothetical question posed to the VE).  Defendant neither explicitly addressed nor explicitly conceded plaintiff's claim that the related hypothetical question was defective.  The standard for reviewing an ALJ's decision is whether that decision is supported by substantial evidence.  This court will not reverse an ALJ's decision on the ground that the Commissioner's counsel failed to adequately address one of the claimant's arguments on appeal.

*Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The ALJ acknowledged that plaintiff had moderate concentration limitations (AR 21). However, after reviewing the evidence of plaintiff's mental condition, the ALJ gave great weight to the state agency physician's opinion that plaintiff retained the ability to understand, carry out and remember simple instructions, and make simple, work-related judgments and decisions (AR 21). Based on this opinion and other evidence in the record, the ALJ concluded that plaintiff should be limited to performing "simple, repetitive tasks" (AR 21). In limiting plaintiff to simple, repetitive tasks, the ALJ found "no credible evidence that the claimant cannot retain sufficient attention and concentration to perform such tasks for two hours at a time as required for competitive employment," and noted that this limitation "is consistent with the claimant's demonstrated ability to perform work activities during the period after the alleged onset date" (AR 21). The ALJ used a nearly identical restriction in the hypothetical question posed to the VE, which limited the hypothetical person "to simple, routine tasks" (AR 48).

Plaintiff contends that this limitation did not fully advise the VE of what plaintiff can and cannot do. The court disagrees. Limiting a claimant to "simple, repetitive tasks" or "simple, routine tasks" addresses the claimant's functional limitations in concentration, persistence and pace.

17

An ALJ's use of terms like "simple,"  "routine," and "repetitive" is essentially shorthand for the types of duties involved in unskilled work, which is defined in the regulations as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).  In this regard, unskilled work has been defined as work which involves simple and routine tasks.

> We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks.  20 C.F.R. § 404.1568(a).

*Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000).  *See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) to support his claim that the ALJ's hypothetical question was deficient.  In *Ealy*, the Sixth Circuit rejected an ALJ's "streamlined hypothetical" which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ found that the claimant's

RFC limited his "ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" Given the specific RFC assessment in that case, the *Ealy* court rejected that ALJ's hypothetical question because it omitted "speed - and pace - based restrictions." *Id.* The present case is distinguishable from *Ealy*. Here, unlike *Ealy*, the ALJ did not find that plaintiff was subject to a specific speed and pace restriction. Rather, the ALJ found that plaintiff had moderate limitations with regard to concentration, persistence or pace, and retained the ability to understand, carry out and remember simple instructions, and make simple, work-related judgments and decisions (AR 21). Such limitations could be accommodated by performing simple, routine and repetitive tasks (i.e., unskilled work). *See Smith*, 307 F.3d at 378-79; *Allison*, 2000 WL 1276950 at *4; 20 C.F.R. § 404.1568(a). The restrictions included in the ALJ's hypothetical question adequately communicated plaintiff's mental limitations to the VE. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.

Dated:  March 26, 2012                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge

19